# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

MANUEL FERNANDEZ-TORRES,

    Plaintiff,

v.

HARRELL WATTS; RAYMOND E. HOLT;
ANTHONY HAYNES; DR. BRUCE COX;
and UNITED STATES OF AMERICA,

    Defendants.

CIVIL ACTION NO.: 2:16-cv-24

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action contesting conditions of his confinement during his incarceration at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). Specifically, Plaintiff contends that Defendants violated his rights to the free exercise of his religion and equal protection, as well the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb. (Doc. 1.) Plaintiff seeks to proceed *in forma pauperis*. (Doc. 2.) The face of Plaintiff's Complaint readily reveals that the applicable statute of limitations bars his constitutional claims. Moreover, he cannot seek monetary relief under the RFRA. Accordingly, the Court **DENIES** Plaintiff's application to proceed *in forma pauperis*. Further, I **RECOMMEND** that the Court **DISMISS** this action.[1]

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678

## BACKGROUND[2]

Plaintiff believes in and practices the Santeria religion. (Doc. 1, p. 3.) He was incarcerated at FCI Jesup from 2010 until October 23, 2014. Id. During that time, he sought to have Santeria Bead Necklaces sent to him by his "spiritual family." (Id. at p. 4; Doc. 1-1.) Receiving necklaces in this manner is an integral part of Plaintiff's religious practices and beliefs. (Doc. 1, p. 4.) Defendants denied Plaintiff's request to receive beads from his spiritual family and directed Plaintiff to purchase the beads from an approved vendor. (Id.; Doc. 1-2.) Beginning on October 28, 2011, Plaintiff filed a grievance and a series of appeals pursuant to the Bureau of Prisons' grievance policy. (Docs. 1-3, 1-5, 1-7.) In those documents, which Plaintiff attached to his Complaint, Plaintiff contended that Defendants' refusal to allow him to receive his beads violated his First Amendment Rights, as well as the RFRA. Id. In denying Plaintiff's grievance and appeals, Bureau of Prisons' officials repeatedly cited Bureau Program Statements which provided that inmates could not receive religious items from home and required inmates to instead purchase such items from approved vendors. (Docs. 1-4, 1-6, 1-8.) Defendant Harrell Watts, the Bureau's Administrator of National Inmate Appeals, denied Plaintiff's final appeal on January 24, 2013. (Doc. 1-8.)

On October 23, 2014, Plaintiff was released to a halfway house in his home territory of Puerto Rico and then later to home confinement. (Doc. 1, p. 6.) After Plaintiff's release, since at

---

F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R&R served as notice that claims would be *sua sponte* dismissed). This Report and Recommendation constitutes fair notice to Plaintiff that his suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the District Court will review de novo properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562-TWT-JFK, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

[2] The Court takes the following facts from Plaintiff's Complaint and accepts them as true, as they must be at this stage.

least December 1, 2014, officials at FCI Jesup have allowed inmates to receive Santeria beads from their spiritual families. Id. Plaintiff signed this lawsuit on February 12, 2016, and it was filed in this Court on February 18, 2016. In his Complaint, Plaintiff sought compensatory damages, punitive damages, nominal damages, and the costs and expenses of litigation. (Id. at p. 13.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis*. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).[3]

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without

---

[3] The Court must also screen any action brought by any "prisoner", that being "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A. The Court need not opine on whether Plaintiff's home confinement triggers this provision because, even if Plaintiff is not currently a "prisoner", his claims are subject to screening under Section 1915(e)(2), as he is proceeding *in forma pauperis*.

3

arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

**I. Dismissal of Claims against the United States and Defendants in their Official Capacities**

Plaintiff seeks to hold Defendants liable for violating his rights under the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Doc. 1.) In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 402 U.S. 388 (1971), the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers" for violations of certain constitutional rights. <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001). However, "<u>Bivens</u> only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities." <u>Sharma v. Drug Enforcement Agency</u>, 511 F. App'x 898, 901 (11th Cir. 2013) (citing <u>Malesko</u>, 534 U.S. at 69–71). Furthermore, a <u>Bivens</u> action cannot be brought directly against the United States or against a federal agency. <u>FDIC v. Meyer</u>, 510 U.S. 471, 472 (1994); <u>Daniel v. United States</u>, 891 F. Supp. 600, 603 (N.D. Ga. 1995) ("A <u>Bivens</u> action is a judicially created remedy against federal actors in their individual capacities and does not create a remedy against the United States.").

Additionally, the Eleventh Circuit has held that Congress did not unequivocally waive the United States' sovereign immunity through the RFRA. <u>Davila v. Gladden</u>, 777 F.3d 1198, 1210–11 (11th Cir. 2015). Therefore, the RFRA does not authorize suits for money damages against the United States or against federal officers in their official capacities. <u>Id.</u>

Therefore, Plaintiff's <u>Bivens</u> and RFRA claims for money damages against Defendants in their official capacities should be **DISMISSED**.

**II. Dismissal of Plaintiff's Constitutional Claims due to Untimeliness**

The statute of limitations applicable to 42 U.S.C. § 1983 actions applies to Bivens claims. Walker v. United States, 196 F. App'x 774, 776 (11th Cir. 2006) (citing Kelly v. Serna, 87 F.3d 1235, 1239 (11th Cir. 1996)). Because 42 U.S.C. § 1983 does not contain a limitations period, federal courts "borrow" the applicable state's statute of limitations for personal injury actions. Wallace v. Kato, 549 U.S. 384, 387 (2007). Constitutional claims brought pursuant to Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all Section 1983 actions filed in federal court in that state. Owens v. Okure, 488 U.S. 235, 236, 249–50 (1989). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33.

Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id. Additionally, "[t]o dismiss a prisoner's complaint as time-barred prior to service, it must 'appear beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar.'" Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003) (quoting Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1280 (11th Cir. 2001) (alterations in original)).

Plaintiff signed his Complaint on February 12, 2016, and it was filed in this Court on February 18, 2016. (Doc. 1.) Thus, given the two years' limitation period, the earliest operative

date for assessing the timeliness of Plaintiff's Complaint is February 12, 2014. Any claims that accrued before that date (or for which the statute of limitations was not tolled until at least that date) are untimely.

Plaintiff was aware of the facts giving rise to his claims against Defendants beginning on October 28, 2011. This is the date that Plaintiff first filed a grievance contending that Defendants' refusal to allow him to receive his beads violated his First Amendment Rights, as well as the RFRA. (Docs. 1-3, 1-5, 1-7.) Of course, this is well before the operative date of February 12, 2014.

The Court notes that Plaintiff pursued administrative remedies, which could serve to toll the statute of limitations period. "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." Lozano v. Montoya Alvarez, ___ U.S. ___, 134 S. Ct. 1224, 1231–32 (Mar. 5, 2014). In Leal, the Eleventh Circuit Court of Appeals "decline[d] to decide in the first instance the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion of remedies by a prisoner will operate to toll the statute of limitations." 254 F.3d at 1280. Georgia law does not permit tolling, and the Eleventh Circuit has not addressed this issue directly. Walker, 196 F. App'x at 777 (stating in Bivens case that court has "declined to decide whether the statute of limitations is tolled in a § 1983 case while a petitioner is pursuing administrative remedies."). However, I conclude, as have several Courts of Appeals, that tolling should apply. Nickolich v. Rowe, 299 F. App'x 725, 725–26 (9th Cir. 2008) (finding that, given California's two-year statute of limitations, a state prisoner's Section 1983 deliberate indifference claim was not barred by the statute of limitations, where the inmate commenced his prison grievance

7

process immediately after his claim accrued and filed a complaint within two years of completing the mandatory grievance process); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) (holding that a federal court relying on the Illinois statute of limitations in a Section 1983 case must toll the limitations period while a prisoner completes the administrative grievance process); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (concluding that tolling is appropriate while prisoner completes mandatory exhaustion requirements); Harris v. Hegmann, 198 F.3d 153, 157–59 (5th Cir. 1999) (same); see also Quilling v. Humphries, No. 4:10cv404-WS, 2010 WL 4783031, at *1 (N.D. Fla. Nov. 17, 2010) (referring a case back to the magistrate judge because it could not be determined that the statute of limitations necessarily barred the plaintiff's claims); and Baldwin v. Benjamin, No. 5:09-CV-372(CAR), 2010 WL 1654937 (M.D. Ga. Apr. 23, 2010) (recognizing that the Eleventh Circuit has not adopted a rule regarding the effect of exhaustion on tolling but noting that the exhaustion requirement may operate to toll the statute of limitations). Accordingly, the applicable statute of limitations period was tolled while Plaintiff pursued his administrative remedies, which was a prerequisite to filing suit because he was imprisoned at the time giving rise to his Complaint.

However, there is nothing before the Court which indicates the exhaustion of Plaintiff's administrative remedies took until February 14, 2014, to complete to render this cause of action timely filed. Hughes, 350 F.3d at 1163 ("[Plaintiff], unlike Leal, has pointed us to no particular reason why the statute of limitations might be tolled in his case, and we can discern none from the record."). Indeed, Defendant Watts denied Plaintiff's final grievance appeal on January 24, 2013. (Doc. 1-8.) Plaintiff did not file this lawsuit until over three years later. Consequently, even assuming that Plaintiff's pursuit of administrative remedies tolled the statute of limitations, his Complaint is still untimely by more than a year.

Plaintiff's untimely claims are also not saved by the continuing violation doctrine. The continuing violation doctrine holds that a plaintiff's action is not time-barred where some of the alleged violations occurred within the statutory period, even though other violations did not, because the early acts were part of a continuing wrong. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1222 (11th Cir. 2001) ("The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." (internal quotation marks and citation omitted)). "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." Lovett, 327 F.3d at 1183.

However, the Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006). "The Eleventh Circuit gives considerable weight to plaintiff's awareness of his rights and his duty to bring a timely claim." Watkins v. Haynes, No. CV 212-050, 2013 WL 1289312, at *5 (S.D. Ga. Mar. 27, 2013). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." Hipp, 252 F.3d at 1222.

Plaintiff contends that the violation of his rights continued to the time of his release from FCI Jesup on October 23, 2014. (Doc. 1, p. 6.) However, well before this date, Plaintiff was clearly armed with sufficient facts that would have alerted a reasonable person to act to assert his rights. Hipp, 252 F.3d at 1222. Indeed, in October of 2011, he filed a grievance asserting the

same factual allegations and legal theories that he asserts in this action. Furthermore, each Defendant's denial of Plaintiff's grievance or appeal was not a continuing denial but a one-time action. Watkins, No. CV 212-050, 2013 WL 1289312, at *5 (dismissing Bivens free exercise of religion claims as untimely and holding, "[r]esponding to Plaintiff's administrative remedy request was a single act. The Defendants each acted one time. Their responses were not ongoing. As such, Plaintiff's Complaint does not allege a continuing violation.").

Thus, the face of Plaintiff's Complaint reveals beyond a doubt that he can prove no set of facts which would avoid a statute of limitations bar as to his Bivens claims. Consequently, the Court should **DISMISS** Plaintiff's claims that Defendants violated his constitutional rights to the free exercise of his religion and the equal protection of the laws.

### III. Dismissal of Plaintiff's RFRA Claims

"Congress enacted RFRA . . . in order to provide very broad protection for religious liberty." Burwell v. Hobby Lobby Stores, Inc., ___U.S. ___, 134 S. Ct. 2751, 2760 (June 30, 2014). Under the statute, the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb–1(a).[4] "Congress enacted RFRA . . . in order to provide very broad protection for religious liberty." Burwell, ___ U.S. at ___, 134 S. Ct. at 2760. If the Government takes action that

---

[4] The RFRA does not contain a statute of limitations. However, on December 1, 1990, Congress established a general statute of limitations of four years under 28 U.S.C. § 1658(a). This statute states, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). Accordingly, a four-year statute of limitations applies to claims based on statutes enacted after December 1, 1990. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 380 (2004); Edwards v. Nat'l Vision Inc., 568 F. App'x 854, 860 (11th Cir. 2014). The RFRA was enacted in 1993, and, therefore, the four-year statute of limitations under Section 1658 applies to Plaintiff's RFRA claims. Al-Sadun v. DCFS, No. 08 C 4802, 2011 WL 1378638, at *3 (N.D. Ill. Apr. 11, 2011); Jama v. U.S. INS, 343 F. Supp. 2d 338, 365 (N.D.J. 2004); Garraway v. Lappin, No. 4:CV-10-1697, 2012 WL 959422, at *3 (M.D. Pa. Mar. 21, 2012). At this early stage, it appears plausible that the statute of limitations was tolled while Plaintiff pursued his available administrative remedies. Because that process was apparently not completed until January 24, 2013, it does not appear on the face of Plaintiff's Complaint that his RFRA claims are untimely.

substantially burdens a person's exercise of religion, it must "demonstrate[ ] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b); see also Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) (pursuant to RFRA, the federal government must demonstrate a compelling interest when substantially burdening the exercise of religion).

The RFRA states that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb–1(c). There is no binding precedent which addresses whether the RFRA provides claims against individual defendants for monetary damages. See Davila v. Gladden, 777 F.3d 1198, 1210 (11th Cir. 2015) ("[W]e decline to address whether RFRA authorizes suits against officers in their individual capacities."). However, Chief Judge Lisa Godbey Wood of this Court has previously addressed this issue and determined that the RFRA does not provide for such claims. See Davilla v. Nat'l Inmate Appeals Coordinator, No. CV212-005, 2012 WL 3780311, at *1–3 (S.D. Ga. Aug. 31, 2012). In Davilla, Chief Judge Wood, who is the presiding judge in this case, explained,

> As Defendants note, there is no binding precedent which addresses whether the RFRA bars claims against individual defendants for monetary damages. However, several courts have addressed this question and have determined that the RFRA does not allow for the recovery of monetary damages. Oklevueha Native American Church of Hawaii, Inc. v. Holder, 676 F.3d 829 (9th Cir. 2012) (the "appropriate relief" provision does not allow suits for monetary damages under the RFRA); Burke v. Lappin, 821 F. Supp. 2d 244 (D.C. 2011) (the RFRA did not waive the federal government's sovereign immunity for damages); Jean-Pierre v. Bureau of Prisons, No. 09–266, 2010 WL 3852338 (W.D. Pa. July 30, 2010) (the RFRA does not waive sovereign immunity for monetary damages); Bloch v. Thompson, No. 1:03-CV-1352, 2007 WL 60930 (E.D. Tex. Jan. 5, 2007) (the RFRA does not waive immunity for damages); and Gilmore-Bey v. Coughlin, 929 F. Supp. 146 (S.D.N.Y. 1996) (the RFRA did not abrogate Eleventh Amendment bar to actions for monetary damages); but see Agrawal v.

11

> Briley, No. 02C6807, 2006 WL 3523750 (N.D. Ill. Dec. 6, 2006) (the RFRA does not bar monetary damages).
>
> The Eleventh Circuit Court of Appeals has not determined whether the RFRA bars monetary damages claims against individual defendants. However, the United States Supreme Court determined in Sossamon v. Texas, ___ U.S. ___, 131 S. Ct. 1651, 1659–60 (Apr. 20, 2011), that the "appropriate relief" provision of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–2(a), is not "the unequivocal expression" of consent for states to "waive their sovereign immunity to suits for damages." In Smith v. Allen, the Eleventh Circuit concluded that § 2000cc–2(a) "cannot be construed as creating a private cause of action against individual defendants for monetary damages." 502 F.3d 1255, 1275 (11th Cir. 2007), *abrogated on other grounds by* Sossoman. The "appropriate relief" section contained in the RFRA is identical to that contained in the RLUIPA. 42 U.S.C. §§ 2000bb–1(c) and 2000cc–2(a).
>
> The undersigned has no reason to believe that the Eleventh Circuit's reasoning in a case pertaining to the RFRA would be any different than that court's reasoning in Smith, which concerned the RLUIPA and which is a statute of very similar construct as the RFRA. Accordingly, the undersigned agrees with Defendants that Plaintiff's monetary damages claims under the RFRA against Defendants are barred. See Cardinal v. Metrish, 564 F.3d 794, 799–801 (6th Cir. 2009) (noting the RLUIPA's "appropriate relief" provision is not a clear and unequivocal waiver of sovereign immunity and monetary damages claims are barred), and (citing Webman, 441 F.3d 1022, with seeming approval, that the RFRA does not authorize monetary damages claims).

Id. at *2–3. Chief Judge Wood went on to hold that the RFRA permitted the plaintiff to pursue claims for injunctive relief. Id.

Chief Judge Wood's holding regarding monetary damage claims under the RFRA applies with equal force in the case at hand. Because the RFRA does not provide for such relief, the Court must dismiss all monetary damage claims against the individual Defendants. Moreover, Plaintiff does not assert any claims for injunctive relief. Even if he had, those claims would be dismissed, because Plaintiff is no longer incarcerated at FCI Jesup. Sumner v. State Bd. of Pardons & Paroles of Ga., 255 F. App'x 372, 373 (11th Cir. 2007) ("Given [Plaintiff's] release from prison, this court can no longer 'give meaningful relief' with respect to his claims seeking

an injunction, and therefore those claims are moot."). For all of these reasons, the Court should **DISMISS** Plaintiff's claims under the RFRA.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** this action. The Court **DENIES** Plaintiff's Motion to Proceed *In Forma Pauperis* before this Court.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 26th day of February, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA